# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**LYNDALL ANTHONY GOLDEN**  PLAINTIFF
**ADC # 110206**

**V.**  **CASE NO.: 5:09CV00116 JMM/BD**

**SUSAN POTTS, et al.**  **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.**  **Procedure for Filing Objections:**

The following Recommended Disposition has been sent to United States District Court Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date you receive the Recommended Disposition. A copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

II. **Background**:

Plaintiff, an Arkansas Department of Correction ("ADC") inmate previously detained at the Drew County Detention Facility ("DCDF"), filed this action pro se under 42 U.S.C. § 1983. In his Complaint, Plaintiff alleges that while detained at the DCDF, Defendants acted with deliberate indifference to his medical needs.

Now pending is Defendants' Motion for Summary Judgment (docket entry #59). Plaintiff has responded (#68, #69, and #70). For the following reasons, Defendants' motion (#59) should be GRANTED.

III. **Discussion:**

A. *Summary Judgment Standard*

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) ("The nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of

specific facts which create a genuine issue for trial."). If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See *Celotex,* 477 U.S. at 322. "Although it is to be construed liberally, a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

B.  *Deliberate Indifference to Plaintiff's Medical Needs*

Plaintiff entered the DCDF on September 28, 2009, on charges of residential burglary and theft of property. On April 14, 2009, he was sentenced to 480 months' imprisonment. He remained in the DCDF until his release to the ADC on April 24, 2009 (#61-2). Even though Plaintiff's status went from pretrial detainee to convicted inmate, the Eighth Amendment's deliberate indifference standard is appropriate when addressing Plaintiff's claim. See *Butler v. Fletcher*, 465 F.3d 340 (8th Cir. 2006) (holding that the Eighth Amendment deliberate indifference standard of culpability is appropriate for all claims that prison officials failed to provide pretrial detainees with adequate food, shelter, medical care, and reasonable safety).

The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment. *Jenson v. Clark*, 94 F.3d 1191 (8th Cir. 1996). Deliberate indifference by prison personnel to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Estelle*

3

*v. Gamble*, 429 U.S. 97, 104-05 (1976). An Eighth Amendment claim of deliberate indifference to a serious medical need involves both an objective and a subjective component. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Inmates must demonstrate (1) that they suffered objectively serious medical needs, and (2) that the prison officials actually knew of, but deliberately disregarded, those needs. *Id.* A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* at 778.

To prove deliberate indifference, "[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. *Id.*

Plaintiff filed this action on April 20, 2009, alleging that DCDF officials delayed medical care for several months for his high blood pressure, lower abdominal pain, and

urinary problems (#2). Plaintiff claims that he was forced to pay to see his own doctor, and then was denied a "prostate cancer test" that his doctor recommended (#2). The record shows that Plaintiff received constitutionally adequate medical care during his time in the DCDF.

On October 19, 2008, Plaintiff requested to have his blood sugar checked. Officer Adair removed Plaintiff from his cell, but just before the blood-sugar check, Plaintiff began to collapse (#61-5). An ambulance was called, and Plaintiff was transported to the Drew Memorial Hospital. At the hospital, Plaintiff received blood work, a CT scan, and a chest x-ray (#61-6). Plaintiff was advised to follow up with his primary care physician.

The next day, October 20, 2008, DCDF's doctor, Defendant Roloff Turner, M.D., placed Plaintiff on blood pressure medication and advised the jailers to check Plaintiff's blood pressure and to keep a record (#61-5). Dr. Turner noted that it would take several days of medication for Plaintiff's blood pressure to stabilize. DCDF officials continued to monitor and record Plaintiff's blood pressure during his time in the DCDF (#61-12).

On October 22, 2008, DCDF officials transported Plaintiff to the Drew Memorial Hospital because he was having chest pain. Plaintiff was diagnosed with an upper respiratory infection and was given antibiotics (#61-6 and #61-7).[1] On October 28, 2008,

---

[1] Plaintiff smoked three packs of cigarettes per day for twenty years prior to his incarceration (#61-9, p. 4).

Plaintiff refused to take his medications (#61-5). Plaintiff states that he did not refuse his medication, but was asleep when medication was offered (#68-20).

On November 5, 2008, Plaintiff filed a medical request stating that he had been having trouble urinating for about a month.[2] Defendant Potts responded by asking Plaintiff whether he had mentioned this problem to the doctor during Plaintiff's last hospital visit (#61-3).

On November 10, 2008, Plaintiff returned to Drew Memorial Hospital complaining of high blood pressure. The medical records do not reflect that Plaintiff complained of urinary problems during this hospital visit (#61-7).

On November 14, 2008, Plaintiff submitted a request for dental work. In the request, Plaintiff stated, "Since I've been here you have taken real good care of me and my health. I am very pleased." (#61-3, p. 3)[3]

On December 3, 2008, Plaintiff refused to get up to take his medication (#61-5). The next day, Plaintiff complained that he was feeling dehydrated (#61-3). In response, Defendant Potts noted that Plaintiff had seen the doctor on December 10, 2008.[4]

---

[2] This urinary problem comprises the majority of Plaintiff's complaints and appears to be the crux of Plaintiff's medical claim.

[3] Plaintiff states that unnamed jailors told him to use "sweet talk" to get the medical treatment he wanted (#68-20).

[4] Although Plaintiff indeed saw a doctor on December 10, 2008, this appears to be a mistaken reference to Plaintiff's hospital visit on November 10, 2008.

On December 10, 2008, Plaintiff filed a medical request stating that he was unable to urinate. The same day, Plaintiff saw a doctor who noted that Plaintiff had an infection (#61-3, p. 6). Documentation from this doctor's visit does not appear in the record. The record does show, however, that starting on December 12, 2008, Plaintiff began receiving Ciprofloxacin, which is commonly used to treat bacterial infections (#61-8). In addition, Plaintiff states that he received the prostate medication terazosin on December 10, 2008 (#68, p. 20).

Plaintiff received Ciprofloxacin 250mg twice daily until the morning of December 17, 2008 (#61-12, p. 13). Plaintiff complains that the "low dose" Ciprofloxacin should have been in a 500mg dose, twice daily (#68, p. 44). Plaintiff states that Defendant Dr. Turner gave him an extensive physical examination on December 10, 2008, and in addition to Ciprofloxacin, prescribed terazosin for his prostate (#68, p. 3). Terazosin is commonly used to treat benign prostatic hyperplasia, or enlarged prostate. Plaintiff's medication log shows that he received terazosin from December 10, 2008, until March 17, 2009 (#61-12 and #61-13). At that time, Plaintiff began the medication regiment prescribed by his family doctor, Dr. Reinhart.

On December 17, 2008, Plaintiff filed a medical request stating that he was still having trouble urinating and that his pain was worsening (#61-3, p. 7). He filed a similar request on December 19, 2008 (#61-3, p. 8). The same day, Plaintiff was treated at the Drew Memorial Hospital for abdominal and left flank pain (#61-7, p. 17-27). The

duration of the pain was 2-3 days, intermittent. Plaintiff also complained of problems urinating (#61-7, p. 18). The clinical impression was acute abdominal pain and fecal retention (#61-7, p. 19). Plaintiff was given an injection of toradol and MOM 60ml (#61-7, p. 20). In response to Plaintiff's medical request, Defendant Potts noted that Plaintiff went to the hospital, and she informed Plaintiff that she was ordering fiber for him.

The next day, December 20, 2008, Plaintiff filed a medical request stating that the doctor he saw the previous night did not treat his problem urinating.[5] Plaintiff also stated that he had a swollen prostate and could not urinate. Plaintiff then requested to see a different doctor. Defendant Potts stated that she talked to the doctor and he said Plaintiff did not have a swollen prostate. She further informed Plaintiff that he would have to pay for the visit to see a different doctor (#61-3, p. 9).

On December 23, 2008, and again on January 1, 2009, Plaintiff refused his medications (#61-5). In a medical request dated December 23, 2008, Plaintiff stated that he needed a high fiber diet and he was entitled to see a doctor of his choice. Plaintiff wrote, "[t]he law states a doctor of my choice, not yours. I want to choose." (#61-3, p. 11) Defendant Potts responded, "You have to pay for your own doctor." (#61-3, p. 11)

On January 11, 2009, Plaintiff submitted a medical request stating, "Mrs. Potts, my stay here is coming to pass. I am very pleased with the service. Not at any time have I

---

[5] At this time, Plaintiff was still taking terazosin.

8

been neglected or mistreated although I hope to never acquire your services again." (#61-3, p. 13)

In the next medical request, dated March 10, 2009, Plaintiff stated that he needed to see a doctor of his choice and had money to do so. Plaintiff also requested a § 1983 form (#61-3, p. 14). Defendant Potts responded that an appointment was made with Dr. Reinhart. Plaintiff refused his medication again on March 8, 2009, and March 11, 2009 (#61-5).

On March 18, 2009, the day Plaintiff was scheduled to see Dr. Reinhart, Plaintiff filed a medical request stating, "Mrs. Potts, I'm very disappointed in the service lately. I am not responsible for my health care, Drew County is. I am requesting to speak to somebody from the Arkansas State Troopers Internal Affairs or the FBI!" Defendant Potts responded, "you requested your own doctor and you have to pay for your own." (#61-3, p. 15)

Plaintiff saw Dr. Reinhart for urinary hesitancy, urine trickles, and abdominal pain on March 18, 2009. The clinical impression was prostatitis. Dr. Reinhart prescribed bactrim and flomax and advised Plaintiff to have a PSA[6] in two months (#61-11).

---

[6] Defendants state that "PSA" is a reference to a Prostate-Specific Antigen test. Plaintiff alleges his doctor ordered a full prostate examination.

On March 28, 2009, and March 31, 2009, Plaintiff requested to see Dr. Reinhart. In response to both requests, DCDF officials stated that Plaintiff would have to pay to see Dr. Reinhart, or Plaintiff could see the DCDF doctor without payment (#61-3, p. 16-17). Plaintiff refused his medication on April 6, 2009, April 17, 2009, April 20, 2009, and April 21, 2009 (61-5, p. 13-18). The ADC took custody of Plaintiff on April 24, 2009, four days after Plaintiff filed this action.

On July 28, 2009, Plaintiff underwent a prostate examination at the ADC which showed Plaintiff's prostate was "slightly enlarged." (#61-9, p. 12) The ADC doctor, Charles L. Liggett, M.D., prescribed Plaintiff terazosin, the same medication prescribed by Defendant Dr. Turner during Plaintiff's time in the DCDF, and scheduled Plaintiff for follow-up care in four months (#61-9, p. 12).

The record shows conclusively that DCDF officials did not deny Plaintiff medical treatment, through either DCDF policy or individual action. During the seven months Plaintiff was housed in the DCDF, he was treated at Drew Memorial Hospital four times. He was provided additional doctor and dental appointments. DCDF officials regularly provided Plaintiff prescription medication. In addition, Plaintiff was allowed to see a doctor of his choice, though he had to pay to do so.

Viewing the record in a light most favorable to Plaintiff, the record shows that the treatment provided to Plaintiff failed to cure his various ailments. The record does not

show, however, that any of the Defendants were deliberately indifferent to any of Plaintiff's medical needs.

The record reflects some short delays in requested treatment. Plaintiff, however, has failed to provide any evidence that a delay in treatment affected his prognosis. See *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994) (delay in treatment claims require evidence that defendants ignored an acute or escalating situation or that the delays adversely affected the prognosis).

In response to Defendants' motion, Plaintiff provides what purports to be a "diagnosis of physical injury" from Plaintiff's physician (#68, p. 7). Based on the wording alone, this handwritten document is highly dubious. The signature is illegible; the document is not verified; the opinions expressed are conclusory; and the opinions lack supporting medical documentation. It is implausible that such opinions and diagnoses were made without clinical testing or physical examination. This handwritten document does not fulfill Plaintiff's obligation to respond to the medical evidence provided by Defendants. Based on the record, the Court concludes that Plaintiff has failed to show any injury resulting from the short delays in treatment. See *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (citations omitted) (Eighth Amendment claims require more than *de minimis* injury).

Plaintiff's complaint centers on his disappointment with the results of his medications and his desire to see a doctor of his choosing. Plaintiff, however, has no

11

constitutional right to receive a particular or requested course of treatment. *Long*, 86 F.3d at 765. Under the circumstances presented here, Plaintiff had no right to see a particular doctor. The medical care Defendants provided to Plaintiff, even if imperfect, was constitutionally sufficient. There is no evidence that any of the Defendants were deliberately indifferent to Plaintiff's medical needs. Accordingly, Plaintiff's claims should be dismissed with prejudice.

**IV.    Conclusion:**

The Court recommends Defendants' motion for summary judgment (#59) be GRANTED.

DATED this 2nd day of February, 2010.

_____
UNITED STATES MAGISTRATE JUDGE